**Freddie Allen KEELING and Steven Thompson Keeling, Appellants,**

v.

**STATE of Oklahoma, Appellee.**

**Nos. F–87–138, F–87–139.**

Court of Criminal Appeals of Oklahoma.

April 25, 1991.

Opio Toure, Asst. Appellate Public Defender, for appellant Freddie Keeling.

Thomas Purcell, Asst. Appellate Public Defender, Norman, for appellant Steven Thompson Keeling.

Robert H. Henry, Atty. Gen., A. Diane Hammons, Wellon B. Poe, Asst. Attys. Gen., Oklahoma City, for appellee.

## OPINION

LUMPKIN, Vice–Presiding Judge:

Appellants Freddie Allen Keeling and Steven Thompson Keeling were tried jointly in the District Court of Osage County, Case No. CRF–84–97. Both Appellants were convicted of two (2) counts of Robbery with Firearms in violation of 21 O.S. 1981, § 801. Freddie Keeling was also convicted of one (1) count of Shooting with Intent to Injure in violation of 21 O.S.1981, § 645. Steven Keeling was also found

guilty of one (1) count of Assault and Battery with a Deadly Weapon in violation of 21 O.S.1981, § 652.

The jury recommended as punishment ten (10) years imprisonment for each Appellant on each count of robbery, plus an additional ten (10) years imprisonment for Freddie Keeling's conviction for shooting with intent to injure, and an additional fifteen (15) years imprisonment for Steven Keeling for the assault and battery conviction. The trial court sentenced accordingly, ordering the sentences to run concurrently. It is from these judgments and sentences that Appellants have perfected separate appeals. For purposes of appellate review, we have consolidated the cases.

On June 1, 1984, Freddie Keeling and his brother, co-defendant Steven, drove from Osage to Hominy, Oklahoma, intending to rob Claude's Food Store. Freddie carried a pair of pantyhose and a cowboy hat to use as a disguise. Traveling with the Appellants were Freddie's four young children. Arriving in Hominy at approximately 5:30 p.m., Steven drove to the parking lot of Claude's while Freddie pulled the stockings over his head and placed the cowboy hat on top. Freddie exited the car, carrying a gun, and entered the store while Steven and the children waited in the car.

Lisa Allcock and Paula Cross were working at the two open cash registers that day. Ms. Cross did not see Freddie enter the store but looked up to find a gun pointed at her and Freddie demanding all the money. Stunned, she refused the demand and told him to get out of the store. Freddie left and went to the register where Ms. Allcock was working. Pointing the gun at her, he made the same demand. Ms. Allcock complied and gave him the entire cash drawer. She later testified that she estimated that it contained approximately five hundred ($500.00) dollars. Freddie then returned to Ms. Cross and this time was given the cash drawer. He turned the gun on the numerous customers and employees in the store and ordered them down on the ground. Backing up to the door, he remarked to Ms. Cross, "Lady, I would love to shoot you, lay down." (Tr. 248) As Freddie exited the store, Ms. Cross shouted for her father, the store manager, who had been observing the robbery from a back aisle. Mr. Cross retrieved his gun from the store office and chased Freddie outside.

Mr. Cross saw Freddie in the parking lot, attempting to pull the pantyhose off his head, and fired twice at him. Freddie was able to run around and hide behind a van, but he was knocked to the ground a few minutes later by a pickup driven by Claude Milsap, Sr., the father of the owner of the store. Mr. Milsap had just exited the store when he saw the man in the disguise rob the store. Attempting to prevent his getaway, Mr. Milsap drove his pickup into Freddie. The two cash drawers filled with money, which had been carried under his arm, fell to the ground with Freddie. He was able to pick himself up and force his way into Mr. Milsap's pickup, gaining control of the steering wheel. Pushed to the floor of the passenger seat, Mr. Milsap began kicking Freddie. Mr. Cross jumped on the side of the pickup and was able to reach inside to hit Freddie over the head with his gun. Freddie subsequently stopped the pickup while still in the parking lot.

David Pillars of the Hominy Police Department arrived to find a crowd of people around the pickup. Freddie was still seated inside the pickup, with the pantyhose still on his head and blood on his face. He was placed under arrest and taken to the hospital.

Meanwhile, Steven Keeling was waiting in the parking lot on the opposite side of the store when he heard gunshots. Driving around to see what was happening, he saw two men hitting a man in a pickup who was wearing pantyhose on his head. Steven drove towards the pickup and en route struck Mr. Cross, knocking him over the hood of the car. Steven then left the parking lot, drove to Cleveland, Oklahoma, where he left the children with their grandmother and then went to a friend's home. Heading for home approximately three (3) hours later, Steven Keeling was arrested at a roadblock outside Hallet.

The identity of which of the brothers actually entered the store was the subject

of conflicting evidence at trial. Witnesses testified that it was difficult to tell the two brothers apart. The man who entered the store with the stocking over his head was consistently described as a large man "heavy set", the "fat one", "fairly large and stocky build", and "the big man with the fat face". Lisa Allcock, Paula Cross, Officer Pillar and four other customers and employees of the store identified Steven Keeling as the man who entered the store. Deputy Sheriff Paul Mann and Bill Williams identified Freddie Keeling. Jack Cross identified Freddie as the man in the store but pointed out Steven Keeling at trial. Adding to this confusion was the appearance of the Appellants at trial. Freddie, previously described as the larger of the two brothers, had lost approximately 80 pounds while Steven Keeling had gained weight.

■ Both Appellants allege that the prosecution for two counts of robbery was a violation of the constitutional prohibition against double jeopardy and the statutory prohibition against dual punishment. United States Constitution, Amend. V; Okl. Const. Art. 2, § 21; 21 O.S.1981, § 11. Appellants argue that the two counts of robbery constitute merely one offense, as only one store was robbed.

To support his argument, Appellant directs this Court's attention to *Johnson v. State*, 650 P.2d 875 (Okl.Cr.1982), wherein we held that the defendant's robbery of money from several cash registers at a McDonald's restaurant constituted a single offense of robbery. In *Johnson*, the appellant alleged that a double jeopardy violation occurred by charging him separately with the robbery of the restaurant and the robbery of $5.00 from a customer present therein. In ruling that those two incidents were separate offenses for double jeopardy purposes, we stated that the robbery of the restaurant constituted one offense.

In the present case, the money which was taken by Appellants belonged to Claude's Food Store, regardless of the number of cash registers or cashiers involved. The offenses stemmed from the same transaction and all the evidence nec-essary to prove the first count was the same evidence necessary to prove the second. *See Doyle v. State*, 785 P.2d 317, 323 (Okl.Cr.1989).

If one of the counts of robbery involved the taking of money from a customer and one count involved the taking of money from the store as in *Johnson,* then we would have two (2) separate offenses. However, that is not the case here.

Therefore, we find that the prosecution of Appellants for two counts of robbery violated the prohibitions against double jeopardy and dual punishment. Accordingly, the convictions for Count II, Robbery with Firearms lodged against each Appellant are hereby vacated with instructions to dismiss.

■ As a separate allegation of error, Freddie Keeling contends that he was denied a fair trial by being tried with his co-defendant brother. The granting of a motion for severance is discretionary with the trial court and its ruling will not be disturbed on appeal, absent a clear showing of abuse of that discretion resulting in prejudice. *Master v. State*, 702 P.2d 375, 378 (Okl.Cr.1985). Relying on *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), Freddie argues that the trial court violated the Confrontation Clause in admitting Steven's confession without completely redacting any references to Freddie. The State responds that no error occurred as the confession was sufficiently redacted to eliminate any references to Freddie.

The record reflects that Osage County Deputy Sheriff Bill Williams interviewed Steven on June 2, 1984. At that time, Steven confessed to driving the car containing himself, the children and Freddie to Hominy and to waiting in the car while Freddie went inside Claude's Food Store with the intent to rob it. Before presenting the confession to the jury, all references to Freddie were deleted and replaced with the word "he".

The Supreme Court in *Bruton* held that a defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a nontestifying co-defendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the co-defendant. 391 U.S. at 136–137, 88 S.Ct. at 1628. Subsequently, in *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 1707, 95 L.Ed.2d 176 (1987), the court held that the Confrontation Clause is not violated by the admission of a nontestifying co-defendant's confession with a proper limiting instruction when the confession has been redacted to eliminate not only the defendant's name, but any reference to the defendant's existence. However, the court expressly declined to decide whether a confession that merely replaces the defendant's name with a symbol or neutral pronoun would constitute a *Bruton* violation. *Id.* 107 S.Ct. at 1709 n. 5.

Our analysis of the above cases reveals that the determining factors as to whether a *Bruton* violation has occurred is whether the facts of the case are such that the use of a neutral pronoun in a redacted statement could only refer to the co-defendant or whether independent evidence is required to provide the identity of the other person involved.

This issue was addressed in *United States v. Bennett*, 848 F.2d 1134, 1142 (11th Cir.1988), wherein the court determined that under the facts of the case the use of pronouns in the redacted statement "could most logically be understood" only to refer to the co-defendants. Absent the redacted confession the prosecution could only present evidence of the three defendants walking on a private estate, soaking wet and covered with sand, "look[ing] like they just came out of the ocean." After being called by the caretaker of the estate, the police discovered an unoccupied three-seat ocean racer about fifty yards off shore which contained approximately 750 kilograms of cocaine. One of the defendants confessed and the two co-defendants denied any knowledge of the boat. The court held that under those circumstances the use of

the pronouns in the redacted statement constituted a *Bruton* violation.

In the present case, the general references in the redacted confession did not directly implicate Freddie in the robbery. The Appellants were not arrested at the same time as were the defendants in *Bennett* (wherein an unqualified interest was created that the defendant was the person referred to as "he"). Further, Freddie's involvement in the robbery had already been established by independent evidence. Jack Cross had identified Freddie as the man in the store and later as the man in the parking lot in the custody of Officer Pillar. Paul Moore, Deputy Sheriff of Osage County, identified Freddie as the individual in Pillar's custody at the scene. Deputy Moore also testified to a conversation with one of the children in the car, seven (7) year old Jeremy Baker, who stated that Freddie Keeling had on the pantyhose and cowboy hat and had gone into the store with a gun while he and his sisters waited in the car with Uncle Steve. Deputy Bill Williams also identified Freddie as the individual he interviewed in the hospital shortly after the robbery. Any inferences as to Freddie's identity arising from the redacted confession merely served to corroborate this independent evidence of Freddie's participation in the robbery.

■ In light of jury instructions to give separate consideration to the case of each individual defendant and a limiting instruction to consider any admission only against the defendant who made the admission, (O.R. 64, 70), we find that the admission of the redacted confession in a joint trial did not deny Freddie Keeling a fair trial. Therefore it was not an abuse of the trial court's discretion to deny a motion for severance. Even if the denial of severance and use of the redacted statement had been determined to be error, under the facts of this case it would have been harmless error. *Bennett*, 848 F.2d at 1142. *See also Smith v. State*, 765 P.2d 795, 796 (Okl.Cr. 1988); *Bear v. State*, 762 P.2d 950, 955 (Okl.Cr.1988). Accordingly, this assignment of error is denied.

Steven Keeling alleges in a separate allegation of error that he was denied a fair trial by prosecutorial misconduct. Initially, he contends that the prosecutor went outside the record in stating facts not in evidence to the jury. Specifically, Appellant refers to a comment that Steven's parents had identified him. (Tr. 900) Appellant argues that as evidence pertaining to the identity of the man who entered the store and took the money from the registers was conflicting, telling the jury that his own parents identified him was so prejudicial as to cause fundamental error. As Appellant failed to enter a contemporaneous objection to the comment, we will review only for fundamental error. *Ashinsky v. State*, 780 P.2d 201, 205 (Okl.Cr. 1989); *Gaines v. State*, 568 P.2d 1290, 1293 (Okl.Cr.1977).

When determining whether a prosecutor's closing remarks were outside the record and so prejudicial as to warrant a reversal, the error is to be considered in light of the evidence and whether the remarks can be said to have influenced the verdict against the Appellant. *Thornton v. State*, 668 P.2d 344, 346 (Okl.Cr.1983). Our review shows that the prosecutor did not go outside the record or misstate the evidence as Richard Lehman, Deputy Sheriff of Osage County, testified that he interviewed Steven's parents at their home in Hallet and was given a polaroid photograph of Steven. Deputy Lehman was also informed that Steven owned a gold Pinto automobile, which was being sought by the authorities, and information as to his activities that day. An erroneous impression was not conveyed to the jury as the prosecutor did not state that Steven's parents had identified him as the driver of the car or as the one who entered the store, but only remarked that they had verified the identity of the two brothers. Based upon this evidence, we do not find the comment rose to the level of fundamental error.

Appellant also objects to the following comment:

Now Ladies and Gentlemen, we've got 16 witnesses you've heard, I don't know how many other people were in that store, they all got down on the floor, I don't even know who all they are. Be careful where you go to shop, Ladies and Gentlemen, you're liable to find yourself on the floor. (Tr. 882)

The Appellant objected to this comment and asked that it be stricken. The trial court sustained the objection and ordered the comment stricken.

While we do not condone the remark, we find that it did not so prejudice the Appellant as to require reversal. As defense counsel did not request further relief and as the prosecutor did not pursue the issue after the objection, we find the court's ruling sufficient to cure any error which may have occurred. *See Shepard v. State*, 756 P.2d 597 (Okl.Cr.1988), (wherein we held no authority requiring reversal in a situation where the objection by the defense was sustained). Therefore, this assignment of error is denied.

After review of the errors alleged by Appellant, we find that the convictions in Count II, Robbery with Firearms lodged against each Appellant must be VACATED with instructions to DISMISS. The judgments and sentences in all remaining counts are AFFIRMED.

LANE, P.J., and BRETT, PARKS and JOHNSON, JJ., concur.