164 F.3d 1210
 99 Cal. Daily Op. Serv. 205, 99 Cal. Daily Op.
Serv. 275,
99 Cal. Daily Op. Serv. 432,
99 Daily Journal D.A.R. 445
Kevin Shelby MALONE, Petitioner-Appellant,
v.
Arthur CALDERON, Warden of the California State Prison, San
Quentin, Respondent,
State of Missouri, Intervenor-Appellee.
Kevin Shelby Malone, Plaintiff-Appellant,
v.
Mel Carnahan, Governor of Missouri, Defendant-Appellee,
Pete Wilson, Governor of California, Defendant-Appellee,
Michael Bowersox, Superintendent, Potosi Correctional
Center, Potosi, MO., Defendant-Appellee,
Arthur Calderon, Warden of the California State Prison at
San Quentin, CA., Defendant-Appellee.
 Nos. 98-99035, 98-99036.
 United States Court of Appeals,
Ninth Circuit.
 Jan. 8, 1999.
 
 1
 Before: BEEZER, KLEINFELD, and HAWKINS, Circuit Judges
 
 ORDER
 
 2
 The panel has voted to deny appellant's emergency motion for reconsideration. Judges Kleinfeld and Hawkins vote to deny the motion for rehearing en banc and Judge Beezer so recommends.
 
 
 3
 The full court was advised of appellant's suggestion for rehearing en banc. An active judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed. R.App. P. 35.
 
 
 4
 The motion for reconsideration is denied. The motion for rehearing en banc is denied.
 
 
 5
 REINHARDT, Circuit Judge, concurring in the denial of rehearing en banc.
 
 
 6
 I do not disagree with the decision to deny Malone's petition for rehearing and reject his suggestion for rehearing en banc, given the fact that he has only asked us to stay the scheduled execution by the state of Missouri and has failed to ask us to order the district court to rule on his pending summary judgment motion forthwith or in the alternative to treat the district court's failure to act as a denial and to review that denial. I am convinced from the record that Malone has a substantial likelihood of obtaining relief from his California conviction and sentence if the district court or this court reaches the merits of his habeas petition. In that event, as Judge Hawkins notes in his concurrence to the panel's opinion denying a stay of execution, Malone will be entitled to a new sentencing hearing in Missouri because his Missouri death sentence was based in large measure upon the California conviction. Malone should then be able to obtain a stay of execution from a Missouri state or federal court.
 
 
 7
 Unfortunately, this may never happen. Malone is scheduled to die early next week, and the district court has removed Malone's summary judgment motion from its calendar, perhaps in anticipation of that mooting event. It is, therefore, unlikely that any court in this circuit will reach the merits of Malone's habeas petition before he dies, unless some extraordinary steps are taken. The appropriate step for this court to take at this time is not to stay Malone's Missouri execution but to issue a writ of mandamus ordering the district court to rule on Malone's motion for summary judgment or to treat the district court's failure to act as a denial and rule on the merits of that denial. No request from the petitioner that we take either action is yet before us, however.
 
 
 8
 It is worth noting here that Malone's motion for summary judgment is compelling and that he is likely to prevail. Malone claims that he is actually innocent of the murder for which he was convicted in California but that his trial was riddled with constitutional errors, both structural and evidentiary, that resulted in a wrongful conviction. In his summary judgment motion, Malone states that the California Supreme Court, in ruling on his state habeas petition, appointed a referee to conduct an evidentiary hearing and make findings of fact. The referee found all the facts in Malone's favor and the California Supreme Court adopted those findings. However, it then found the errors harmless.
 
 
 9
 Malone alleges that the integrity of his trial was undermined when the jury's foreman, Dr. Diane Irwin, lied under oath in order to conceal her knowledge and opinions about polygraph testing during voir dire. The California Supreme Court, following the recommendation of the referee, determined that Dr. Irwin committed misconduct when she proclaimed her negative opinions of polygraph evidence during deliberations, but it concluded that there was no prejudice. In re Malone, 12 Cal.4th 935, 50 Cal.Rptr.2d 281, 911 P.2d 468, 487 (Cal.1996).
 
 
 10
 Malone counters that the California Supreme Court applied an incorrect legal standard when it inquired whether or not Irwin's misconduct was "inherently likely to have exercised an improper influence on any of the jurors." Id. at 487. Instead, Malone contends, citing Dyer v. Calderon, 151 F.3d 970 (9th Cir.1998) (en banc) (per Kozinski, J.), that the fact that Dr. Irwin lied during voir dire when she claimed to have no training or opinions about polygraph evidence requires reversal of his conviction. In Dyer, we stated that "the presence of a biased juror cannot be harmless; the error requires a new trial without a showing of actual prejudice ... the presence of a biased juror introduces a structural defect not subject to harmless error analysis." Id. at 973 n. 2. Thus, it appears that Malone might well secure a reversal of his conviction on this basis alone.
 
 
 11
 In addition to juror misconduct, the California Supreme Court found that Malone was prejudiced by the introduction of the perjured testimony of a jailhouse "snitch," Charles Laughlin, who told the jury at length about Malone's "confession" to the California murder-a confession that the California Supreme Court concluded was entirely fabricated by Laughlin in exchange for favors from prosecutors and police officers. The California Supreme Court correctly determined that without the concocted "confession" there was no basis for the jury to conclude that Malone killed Benham or intended that she be killed, and reversed the jury's finding of felony murder special circumstances. However, it concluded that the introduction of the false testimony of a known liar--a man who once pretended to be deaf and retarded in order to avoid prosecution--somehow had no "reasonable probability of affecting the jury's verdict for first degree murder" and was thus harmless. Malone, 50 Cal.Rptr.2d 281, 911 P.2d at 489.
 
 
 12
 Whether an error of federal law is harmless is a mixed question of fact and law subject to de novo review by the federal courts in the context of a federal petition for habeas corpus. Villafuerte v. Stewart, 111 F.3d 616, 622 (9th Cir.1997). Malone argues persuasively in his summary judgment motion that the California Supreme Court erred when it determined that the knowing use by law enforcement of Laughlin's totally false testimony that Malone confessed that he "made Rankin beg for his life before shooting him in the head [and] ... raped Benham before crushing her skull" had no effect on the jury. On the contrary, there is every reasonable probability that such inflammatory testimony affected the jury. Moreover, the fact that Laughlin was known by police and prosecutors to have "a pattern of false informing and fabrication of confessions" in exchange for consideration, Malone, 50 Cal.Rptr.2d 281, 911 P.2d at 484, renders the admission of his testimony a "deliberate and especially egregious error" that is not subject to harmless error analysis at all. Hardnett v. Marshall, 25 F.3d 875, 879 (9th Cir.1994). In sum, Malone presents ample evidence justifying reversal of his California conviction and sentence on this ground as well.
 
 
 13
 Malone complains in his petition for a stay of execution that he has made "extraordinary efforts to obtain a ruling on his California conviction," including requesting expedited consideration of his habeas case and making a motion for summary judgment--all in hopes of obtaining a decision on the merits prior to his execution. Despite these efforts, the district court cancelled a hearing on Malone's summary judgment motion which had been scheduled for December 14, 1998 and has taken the motion under submission. Order Taking Petitioner's Motion for Summary Judgment Under Submission (Dec. 7, 1998) (Doc. 134). All briefs in the matter were filed on December 3, 1998, and the matter is, as Malone rightly points out, "ripe for decision." Response to Missouri's Suggestions in Opposition to Petitioner's Emergency Motion for a Stay of Execution, at 1.
 
 
 14
 Thus, the sole reason Malone seeks a stay of his Missouri execution from this court is that he has been unable to obtain a ruling from the district court on his California conviction despite his best efforts to expedite the process. This court has jurisdiction to hear challenges to such lower court inaction by way of a petition for writ of mandamus. Malone may ask this court to compel the district court to give timely consideration to his motion for summary judgment or request that we treat the district court's failure to act as a denial and review it. Either form of relief may be sought by means of a mandamus petition. As the hours pass without relevant action by any court in this circuit, the first option becomes less feasible and the second more essential.
 
 
 15
 The reason that Malone is absolutely entitled as a matter of law to a decision on his pending habeas petition is that the California conviction the petition seeks to have set aside was the primary evidence supporting the application of the aggravating factor justifying Malone's Missouri death sentence, which will be carried out in a matter of a few days. The California conviction underlies the conclusion that Malone had a "substantial history of serious assaultive conduct." Despite Missouri's claims to the contrary, this was the only aggravating factor upon which the Missouri Supreme Court based its affirmance of Malone's death sentence. State v. Malone, 694 S.W.2d 723, 727-28 (Mo.1985). If Malone's California conviction is set aside, he would clearly be entitled to a hearing in the Missouri court that sentenced him because his sentence was based in part on a conviction that was subsequently invalidated. See Johnson v. Mississippi, 486 U.S. 578, 585, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988).
 
 
 16
 The Missouri courts have so far refused to consider the issue because Malone's California conviction still stands. Following the referee's factual findings that Malone's California trial was infected by jury misconduct, bias, and other Sixth Amendment violations, Malone attempted to challenge his Missouri death sentence based upon the fact that he may succeed in obtaining relief from his California conviction and sentence. The federal district court in Missouri refused to hear this claim on the ground that it was not yet ripe because Malone's proceedings were ongoing. Malone v. Vasquez, 91CV1131, at 171-72 (E.D.Mo. December 4, 1995). Now Missouri seeks to prevent that claim from ever ripening by executing Kelvin Malone before he obtains a ruling on the merits. Such a result would be manifestly unjust and result in yet another "procedurally correct" but constitutionally infirm execution of a man who asserts a credible claim of actual innocence.
 
 
 17
 Malone has never received a review of the merits of his habeas petitions challenging either his California or Missouri convictions, by this circuit or by the Eighth Circuit, with the exception of one extremely minor issue. See Malone v. Vasquez, 138 F.3d 711, 715 (8th Cir.1998).[1] Moreover, the Missouri trial was marred by an egregious Batson violation, and the penalty phase proceeding was a farce, at which the sole witness presented by the public defender was a professor from St. Louis University who offered the opinion that executing Kelvin Malone would not effectively deter future crime. Id. at 731 (Heaney, J, dissenting).
 
 
 18
 While this court may lack jurisdiction to stay the Missouri execution, it does not lack jurisdiction to order the United States District Court for the Central District of California to rule on Malone's habeas petition or to otherwise ensure that the petition is resolved prior to the execution date. If Malone is executed without his habeas petition having been considered by the district court or by this court, it will be yet another example of the inability of our judicial system to ensure that capital punishment is imposed fairly and with regard for the principles dictated by the Constitution.
 
 
 
 [1]
 The Eighth Circuit affirmed the denial of Malone's habeas petition on the basis that nearly all of his claims were procedurally barred because his Missouri counsel had failed to comply with a local rule requiring verification. Malone, 138 F.3d at 718-19