RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0356P (6th Cir.)
File Name: 00a0356p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DARNITA MCGHEE,
  *Petitioner-Appellant,*

   *v.*

JOAN YUKINS, Warden,
  *Respondent-Appellee.*

No. 99-1493

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 97-72331—Nancy G. Edmunds, District Judge.

Argued: August 2, 2000

Decided and Filed: October 6, 2000

Before: KENNEDY and NORRIS, Circuit Judges; KATZ,*
District Judge.

---

## COUNSEL

**ARGUED:** Susan M. Meinberg, STATE APPELLATE
DEFENDER OFFICE, Detroit, Michigan, for Appellant.
Janet A. Napp, OFFICE OF THE PROSECUTING

---

* The Honorable David A. Katz, United States District Judge for the
Northern District of Ohio, sitting by designation.

1

ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Susan M. Meinberg, STATE APPELLATE DEFENDER OFFICE, Detroit, Michigan, for Appellant. Janet A. Napp, OFFICE OF THE PROSECUTING ATTORNEY, Detroit, Michigan, for Appellee.

————————

## OPINION

————————

DAVID A. KATZ, District Judge. Petitioner/Appellant Darnita McGhee appeals the district court's denial of her petition for a writ of habeas corpus. For the following reasons, we shall affirm that judgment.

We are publishing this opinion in order to clarify the difference between the standards to be applied on direct review of a criminal conviction and the standards to be applied on collateral review of state court decisions.

### BACKGROUND

McGhee's conviction arises out of the August 29, 1985 murder of Paul Hutchins in the course of a robbery.

McGhee and her three co-conspirators were associated with a gang called the Be-Likes. The gang had 75-100 members who would meet in downtown Detroit, Michigan, and perform robberies. On the occasion of the robbery and murder giving rise to the habeas petition at bar, McGhee and another conspirator acted as lookouts while two other co-conspirators performed the actual robbery. Hutchins was shot by one of the other robbers. Several Be-Likes gang members were present at the plaza where the robbery and murder occurred.

All four conspirators made statements to the police after their arrest. All four were tried together in June, 1987. None testified. At trial, the trial court permitted partially redacted versions of the defendants' statements to be read into

evidence, over McGhee's objection. The redactions consisted of the replacement of the defendants' names with "friend," "three friends," or "three others;" other gang members' names were left in the transcripts. Thus, the redacted versions that the jurors heard consisted of statements such as:

Q: [W]ho was downtown together?
A: Cocoa, Mary, Shawn, dark dude, Rick, Mike and three other friends, most of the originals.
A: It was some more Be-Like down there but they was just down there, it was just me, Cocoa, Shawn, Bop and three other friends . . . and by the time we got to the festival it was just four of us, three friends and me.
A: There was me, and Shawn and Mary and Cocoa and Bop and Tony and three others I knew and some other I just knew to see. . . . Then me and Tony and Shawn and Mary and Cocoa and three others walked through the Greyhound Bus Station.

Regarding those confessions, the trial court informed the jury that names had been redacted, and "[y]ou are going to hear a phrase called my friend. There is [sic] a lot of different names. Don't worry or speculate or my friends, plural if there are more than one person." During closing argument, the prosecutor urged the jurors to consider the redacted statements as a whole.

McGhee was convicted. She appealed, claiming, *inter alia*, that she was denied her Sixth Amendment right to confront witnesses against her when the nontestifying defendants' confessions, which implicated McGhee, were admitted into evidence without being sufficiently or appropriately redacted. She further argued that the prosecutor's closing argument effectively undid the trial court's instructions cautioning the jurors to consider the statement of a nontestifying defendant only against that individual defendant.

The Michigan Court of Appeals reversed the conviction. The government then appealed that determination. The Michigan Supreme Court held that admission of the statements was not error, and that the jury could be presumed

to have followed the cautionary instruction the trial court gave in response to the prosecutor's closing argument.

McGhee then filed the habeas petition here at issue. The district court found that admission of the statements was error, because those statements were not sufficiently redacted. The district court found that:

> The jury could have concluded from the co-defendants' statements that the references to "friends" were any of the many Be-Like gang members present at Hart Plaza on August 29, 1985. More likely, however, the jury understood "friends" to mean the declarant's co-defendants. After all, four defendants were on trial, each defendant's statement was read into evidence, and only the co-defendants' names were replaced with "my friends" or a similar phrase. The names of other individuals were not redacted. The jury could have inferred that "three friends" mentioned in some of the statements were the declarant's three co-defendants, which included petitioner.

The district court concluded, however, that the error was harmless in light of the overwhelming evidence against McGhee, which included: (1) her own confession; and (2) testimony by Mary Ann Walker and Antoinette Simmons placing McGhee both at the scene of the crime and in the company of the other three defendants. The district court concluded that any alleged prosecutorial misconduct was cured by a cautionary instruction the trial court gave the jury in response to the prosecutor's closing arguments.

The district court denied McGhee's petition. She timely filed this appeal. The district court granted a certificate of appealability both on McGhee's claim that admission of the partially redacted confessions was error, and on her claim that the prosecutor improperly urged the jury to consider the confessions of her nontestifying co-defendants against her.

## CONCLUSION

Petitioner McGhee has demonstrated neither that the admission of the partially redacted statements was an objectively unreasonable application of federal law at the time of her trial nor that prosecutorial misconduct during closing argument created a substantial and injurious effect or influence in determining the jury's verdict. Therefore, we AFFIRM the district court's denial of McGhee's petition for a writ of habeas corpus.

harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt," and the state has the burden of proof. *Chapman v. California*, 386 U.S. 18, 24 (1967). The test on collateral review is different. Relief may be granted on collateral review only if the trial error "had substantial and injurious effect or influence in determining the jury's verdict. Under this standard, habeas petitioners . . . are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

McGhee cannot meet that standard. There was ample evidence upon which to base a conviction. That evidence included McGhee's own confession, which contained the statement that:

It was dark as we left the Greyhound Station and when we got out of the station we went on to the Hart Plaza to get paid [*i.e.*, commit a robbery]. I forgot to say that one of my friends showed us a black handgun, it was a revolver. . . . Me and two of my friends kind of held back around the basketball game and the others went on towards the fountain area. One of my friends said look out for hook [police] and I stood about ten feet from the basketball game towards the fountain and watched for the police. I heard one of my friends say something and a few seconds later a gun went off. I was watching for the police.

Two Be-Like gang members who knew McGhee well also gave testimony placing McGhee at the scene of the shooting. Notwithstanding the undisputed veracity problems of those witnesses, the factual accounts given by McGhee and the other witnesses are the same in all relevant respects. Furthermore, the trial court instructed the jurors to consider each defendant's confession only against that defendant, and the jury is presumed to have followed that instruction. McGhee has not shown that the prosecutor's closing argument created a substantial and injurious effect or influence in determining the jury's verdict.

### STANDARD OF REVIEW

We review the district court's decision de novo. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997). We defer to the state court's legal conclusions unless they involve an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1). We defer to the state court's factual conclusions unless they are based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2).

### ADMISSION OF THE PARTIALLY REDACTED CONFESSIONS

The first issue we must address is whether the district court should have granted a writ of habeas corpus on the ground that the trial court's admission of the partially redacted confessions of McGhee's co-defendants was error, in light of the fact that the trial court had instructed the jury that the confessions had been redacted and names replaced with a phrase such as "friend or friends." Under the Antiterrorism and Effective Death Penalty Act of 1996, an application for a writ of habeas corpus may be granted only if the petitioner demonstrates that the prior adjudication in the state court proceedings:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in the light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The first prong of the test is at issue in this case. With respect to that prong, the Supreme Court has recently explained that:

A state-court decision that correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case certainly would

qualify as a decision involv[ing] an unreasonable application of clearly established Federal law.

*Terry Williams v. Taylor*, 120 S. Ct. 1495, 1520 (2000) (citations omitted). The writ may issue only if the state court's application of federal law was objectively unreasonable. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable" in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision. *Id.* at 1522-23.

The issue we must decide, therefore, is whether the Michigan Supreme Court's determination that admission of the partially redacted statements was not error constituted an unreasonable application of clearly established Supreme Court precedent in 1994.

In 1994, two relevant Supreme Court cases were available to the Michigan Supreme Court: *Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968), and *Richardson v. Marsh*, 481 U.S. 200, 107 S. Ct. 1702, 1709, 95 L. Ed. 2d 176 (1987).

*Bruton* held that a defendant is deprived of his rights under the Confrontation Clause when his nontestifying codefendant's confession naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant. 391 U.S. at 135-36. Thus, the admission of a confession such as "there was me, and Shawn and Mary and Cocoa and Bop and Tony and Darnita" would unquestionably have violated McGhee's rights.

*Richardson*, which was decided about two months before McGhee's criminal trial began, limited *Bruton* to some extent by holding that the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a

should be determined on the basis of that defendant's own acts and statements, and that the arguments given by the attorneys were not evidence, but were only intended to assist the jury in understanding the evidence. The judge did not, however, give the jury a curative instruction aimed specifically at the prosecutor's statements. The Michigan Supreme Court found, and the district court agreed, that any error in the prosecutor's conduct was cured by the judge's general final instructions.

We agree with the Michigan Supreme Court and the district court in this case that some of the prosecutor's statements were arguably improper. The next question we must address, therefore, is whether the trial error "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S. Ct. 475, 482, 116 L. Ed. 2d 385 (1991).

McGhee argues that under 28 U.S.C. § 2254(e)(1) we must defer to the determination of the Michigan Court of Appeals, the highest state court to have addressed the issue, that the error was not harmless. That argument lacks merit. First, the presumption of correctness applies only to state court determinations of historical facts, and the question of whether the prosecutor's statements created prejudicial error is a mixed question of fact and law to which the presumption does not apply. *Malone v. Calderon*, 164 F.3d 1210, 1212 (9th Cir. 1999). Furthermore, the state court of appeals made its determination based on a review of the record, rather than live testimony, so there is no reason to suppose the state court was especially well situated to observe the demeanor of witnesses and to make credibility determinations. Finally, and most importantly, the harmless error standards on direct and collateral review are different.

The standard for showing harmless error on collateral review, like the standard for demonstrating that a trial error has occurred, is considerably less favorable to the petitioner than the standard applicable on direct review. On direct review, "before a federal constitutional error can be held

Michigan Supreme Court ruled on McGhee's appeal, the Supreme Court had not expressed an opinion on the admissibility of partially redacted confessions. Lower courts were split for eleven years on whether, and the extent to which, partially redacted confessions could be admitted, and the ultimate resolution was a 5-4 Supreme Court decision. In 1994, it was not objectively unreasonable for a the Michigan Supreme Court to hold a partially redacted confession containing obvious indicia of redaction admissible, regardless of whether that decision might ultimately have turned out to be error.

The district court in this case did not have the benefit of the *Williams* decision. That decision makes it clear that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 120 S. Ct. at 1522 (emphasis in original). The standard district courts should apply in habeas corpus petitions brought under 28 U.S.C. § 2254 is not whether the state trial court's application of the law was erroneous, but whether the state court's application of the law was objectively unreasonable in light of clearly established Federal law, as determined by the Supreme Court, as of the time of the relevant state court decision. Under that standard, it is clear that McGhee cannot prevail on her claim that the admission of the partially redacted statements warrants the grant of a writ of habeas corpus.

### PROSECUTORIAL MISCONDUCT DURING CLOSING ARGUMENT

The next issue we must address, therefore, is whether the district court should have granted a writ of habeas corpus on the ground that the prosecutor improperly urged the jurors to consider the redacted statements as a whole, notwithstanding the trial court's earlier cautionary instruction to consider each statement only against the defendant who made it.

Defense counsel objected to the prosecutor's closing argument. In response to that objection, the trial judge gave the jury a cautionary instruction that each defendant's case

proper limiting instruction when the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence. 481 U.S. at 211. The *Richardson* Court expressly reserved opinion on the admissibility of a confession in which the defendant's name has been replaced with a symbol or neutral pronoun. *Id*. at 211 n.5.

For the next eleven years, lower courts were split on the issue of whether, and the extent to which, a partially redacted confession, which had been redacted to eliminate all references to the defendant's name, but not to his or her existence, could be admitted.[1]

---

[1] Some courts held that a partially redacted confession was admissible only if it did not clearly implicate the complaining defendant in light of all the evidence presented at trial. *See, e.g.*, *United States v. Vasquez*, 874 F.2d 1515, 1518 (11th Cir. 1989) ("the admission in a joint trial of a codefendant's confession that is redacted to substitute a neutral pronoun or other general word for the name of the complaining defendant does not violate *Bruton* so long as the confession does not compel a direct implication of the complaining defendant"); *accord United States v. Jimenez*, 77 F.3d 95, 98 (5th Cir. 1996); *United States v. Donahue*, 948 F.2d 438, 443-44 (8th Cir.1991); *California v. Fletcher*, 917 P.2d 187, 197-98 (Cal. 1996); *Kansas v. Butler*, 916 P.2d 1, 7 (Kan. 1996); *Massachusetts v. Johnson*, 588 N.E.2d 684, 687 (Mass. 1992); *Keeling v. State*, 810 P.2d 1298, 1302 (Okla. 1991).

Other courts held that the defendant's rights were violated only if the admitted statement was directly inculpatory on its face, without reference to other evidence adduced at trial. *See, e.g.*, *United States v. Williams*, 936 F.2d 698, 700-01 (2d Cir.1991) ("the appropriate analysis to be used when applying the *Bruton* rule requires that we view the redacted confession in isolation from the other evidence introduced at trial. If the confession, when so viewed, does not incriminate the defendant, then it may be admitted with a proper limiting instruction even though other evidence in the case indicates that the neutral pronoun is in fact a reference to the defendant."); *accord United States v. Brooks*, 125 F.3d 484, 501 (7th Cir. 1997); *United States v. Applewhite*, 72 F.3d 140, 145 (D.C. Cir. 1996); *United States v. Enriquez-Estrada*, 999 F.2d 1355, 1359 (9th Cir. 1993); *Maine v. Craney*, 662 A.2d 899, 902 (Me. 1995).

Some state courts expressly approved the use of even obvious redactions, such as "blank" or "deleted," from codefendant confessions. *See Pennsylvania v. Washington*, 700 A.2d 400, 406-07 (Pa. 1997) (no *Bruton* violation where word "blank" was substituted for defendant's name); *Maryland v. Gray*, 687 A.2d 660, 661 (Md. 1997) (no *Bruton*

The United States Supreme Court did not provide further guidance on the issue until 1998, when it held in a 5-4 decision that redactions which replace a proper name with an obvious blank, the word "delete," or similarly notify the jury that a name has been deleted are similar enough to unredacted confessions to warrant the same legal result.

> [A] jury will often react similarly to an unredacted confession and a confession redacted in this way, for the jury will often realize that the confession refers specifically to the defendant. This is true even when the State does not blatantly link the defendant to the deleted name. . . . Consider a simplified but typical example, a confession that reads, "I, Bob Smith, along with Sam Jones, robbed the bank." To replace the words "Sam Jones" with an obvious blank will not likely fool anyone. . . . A juror who . . . wonders to whom the blank might refer need only lift his eyes to Jones, sitting at counsel table, to find what will seem the obvious answer, at least if the juror hears the judge's instruction not to consider the confession as evidence against Jones, for that instruction will provide an obvious reason for the blank.
>
> * * *
>
> *Bruton*'s protected statements and statements redacted to leave a blank or some other similarly obvious alteration, function the same way grammatically. They are directly accusatory. . . . The blank space in an obviously redacted confession . . . points directly to the defendant.
>
> * * *
>
> *Richardson* must depend in significant part on the *kind* of, not the simple *fact* of, inference. *Richardson*'s inferences involved statements that did not refer directly to the defendant himself and which became incriminating only when linked with evidence introduced later at trial. The inferences at issue here involve statements that,

despite redaction, obviously refer directly to someone, often obviously the defendant, and which involve inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial. Moreover, the redacted confession . . . facially incriminates the codefendant.

*Gray v. Maryland*, 523 U.S. 185, 118 S. Ct. 1151, 1155-57, 140 L. Ed. 2d 294 (1998) (citations omitted).

The Supreme Court has never directly addressed the issue McGhee's petition presents, namely, the proper treatment of partially redacted statements containing terms such as "another individual" or "someone," when those terms are less incriminating than blanks, but more incriminating than neutral pronouns.[2]

In this case, the district court determined that the admission of the redacted statements at McGhee's trial violated the rule set forth by the Supreme Court in *Gray*. Whether the admission violated *Gray* is irrelevant to our review. Rather, the issue is whether the introduction of those statements constituted an *objectively unreasonable* application of controlling Supreme Court precedent as it existed in 1994. *See Williams*, 120 S. Ct. at 1520.

It did not. *Richardson*, the controlling case, was only a few months old at the time of the trial. In 1994, when the

---

violation where word "deleted" was substituted for defendant's name); *Pennsylvania v. Miles*, 681 A.2d 1295 (Pa. 1996) (no *Bruton* violation where "X" was substituted for defendant's name).

---

[2]Even in the wake of *Gray*, the Courts of Appeals disagree about the admissibility of such statements. *Compare United States v. Logan*, 210 F.3d 820 (8th Cir. 2000) (use of "another individual" did not violate Confrontation Clause); *United States v. Verduzco-Martinez*, 186 F.3d 1208, 1213-14 (10th Cir. 1999) (use of "another person" did not violate Confrontation Clause); *United States v. Gonzalez*, 183 F.3d 1315, 1322 (11th Cir. 1999) (redacted confession that implicated a precise number of the confessor's codefendants violated Confrontation Clause); *United States v. Akinkoye*, 174 F.3d 451, 457 (4th Cir. 1999) (use of "another person" and "another individual" did not violate Confrontation Clause); and *United States v. Vejar-Urias*, 165 F.3d 337, 340 (5th Cir. 1999) (use of "someone" violated Confrontation Clause).