RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2002 FED App. 0231P (6th Cir.)
File Name: 02a0231p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

WILLIAM A. ANTHONY, III,
          *Petitioner-Appellant,*

                    *v.*                                    No. 00-3886

DON DEWITT, Warden,
          *Respondent-Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 99-00475—James L. Graham, District Judge.

Argued: January 29, 2002

Decided and Filed: July 15, 2002

Before: RYAN and GILMAN, Circuit Judges; POLSTER,
District Judge.[*]

---

**COUNSEL**

**ARGUED:** Pamela Conger-Cox, OHIO PUBLIC
DEFENDER COMMISSION, Columbus, Ohio, for
Appellant. Diane Mallory, OFFICE OF THE ATTORNEY

---

[*] The Honorable Dan Aaron Polster, United States District Judge for
the Northern District of Ohio, sitting by designation.

1

GENERAL, Columbus, Ohio, for Appellee. **ON BRIEF:** Pamela Conger-Cox, OHIO PUBLIC DEFENDER COMMISSION, Columbus, Ohio, for Appellant. Diane Mallory, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

---

**OPINION**

---

DAN AARON POLSTER, District Judge. Petitioner-Appellant William A. Anthony, a state prisoner incarcerated for aggravated murder, appeals the district court's order denying his petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. The only issue on appeal is whether the trial court's admission of the testimony of two witnesses, recounting statements made by an out-of-court declarant, violated the Sixth Amendment's Confrontation Clause. For the following reasons, the decision of the district court is **AFFIRMED**.

### I. Background

On October 18, 1996, a jury convicted William Anthony of the aggravated murder of Patricia Smith, with firearm specifications. Anthony was sentenced to life imprisonment with eligibility for parole at the end of twenty years, plus three years additional incarceration for the firearm specification.

Several months prior to the murder, Smith had filed felony theft charges with the police against Anthony's friend, Rommell Knox, for stealing a ring from her apartment when Knox was performing a routine pest extermination. Knox, who had a prior criminal record, feared going to jail for the theft. On the evening of January 4, 1995, Rommell Knox and William Anthony drove to Smith's apartment complex with Rommell's brother, John Knox, and Rommell's girlfriend, Mary "Buffy" Payne. When they got to the apartment complex, John and Rommell Knox stayed in the car while Payne and Anthony walked to Smith's door. As Smith started

In any event, the admission of Rommell's statements to Regina, telling her that he wanted Smith shot because he didn't want to go to jail, that he intended to pay Anthony and Payne $250, presumably for their services, and that he wanted her to lie about his whereabouts the evening of the murder and help him create an alibi, did not violate the Confrontation Clause because they were declarations against Rommell's penal interest. *Williamson v. United States*, 512 U.S. 594 (1994).

Even if those statements that were not clearly against Rommell's penal interest were insufficiently reliable to be admitted at trial, their admission would constitute harmless error because of our conclusion that they did not have a substantial and injurious effect or influence in determining the jury's verdict. *Brecht*, 507 U.S. at 637. Prior to Regina Knox's testimony, there was sufficient corroborating testimony from John Knox and Mary Payne describing the events on the evening of Smith's murder, making Regina Knox's hearsay testimony in this regard cumulative. In addition, habeas petitioners are not entitled to relief based on trial error unless they can establish that the error resulted in actual prejudice, an issue Anthony never addressed. *McGhee*, 229 F.3d at 512.

## IV. Conclusion

Based on the foregoing, the district court's denial of Anthony's habeas petition is **AFFIRMED**.

to open the door, she was shot and killed with Rommell's gun. Subsequently, Rommell Knox and William Anthony were prosecuted for aggravated murder, and tried separately.[1]

At Anthony's trial, the state called Detective James Scott.[2] Detective Scott testified that he investigated the theft of Patricia Smith's ring. As a result of his investigation, criminal charges were filed against Rommell Knox, a former employee of Ohio Exterminating Co. The charges against Rommell were dropped after Smith's murder.

Robin Dunlap, a resident of Smith's apartment complex, testified that on January 4, 1995, she heard gunshots in the complex and, after hearing the shots, looked out her window and saw what she believed to be a white woman with short, bouncy hair running away from the building. She did not see anyone else in the courtyard. She called 911 when she discovered that her neighbor, Patricia Smith, had been shot.

Detective Brian Lacy, who headed the investigation of Smith's murder, testified that the police had no immediate suspects. A few days later, however, he received a telephone call from a female named Regina Knox (later identified as Rommell's wife), who claimed to have information regarding Smith's murder. He persuaded her to come to the station and, after verifying her identity, interviewed her. As a result of that interview, the investigation focused on Rommell Knox, John Knox, a person named "Will" and a woman named "Buffy." Regina Knox agreed to accompany police officers to the apartment of John Knox, where they found and apprehended John, Rommell and an unidentified woman. Detective Lacy interviewed John Knox and testified that, after the interview, the four suspects remained the same but he

---

[1] Payne was not charged and John Knox pled guilty to the lesser offense of manslaughter, a plea that was later withdrawn. The state ultimately dropped the charges against John.

[2] The testimony of the witnesses, recounted below, is set forth in the order in which they were called.

could now identify "Buffy" as Mary Payne and "Will" as William Anthony. Detective Lacy observed part of Rommell's interview and personally interviewed Rommell, after which he again confirmed the same four suspects.

After Detective Lacy's testimony but before the state called Mary Payne, the trial court held a preliminary hearing under Ohio Evid. R. 104, outside the presence of the jury, to determine the admissibility of Payne's "hearsay" testimony. At the conclusion of the hearing, the trial judge ruled that the state had sufficient evidence to make a *prima facie* showing of a conspiracy, but that it would need to present its evidence in the proper order.

Thereafter, Mary Payne testified to the following facts. She met Rommell Knox in November 1994 and began an intimate relationship with him. She later met Rommell's brother, John, and William Anthony, who was introduced to her as Rommell's "cousin." The four spent a lot of time together, often went to a club called Dee's, and Rommell "always called the shots." At the time of the murder, Payne was aware of the theft charges brought against Rommell. On January 4, 1995, Rommell called and invited her out. Rommell arrived at Payne's home with John Knox and William Anthony. They all got into John's car and drove to Smith's apartment complex. Upon arrival at the apartment complex, Rommell pointed out Smith's apartment. He asked Payne if she would accompany Anthony to the apartment and knock on the lady's door who had filed charges against him (Rommell) so that Anthony could talk to her about dropping the charges. Rommell told Payne that he wanted her to knock on the door because the woman would not open the door for a black man (Anthony), but would open it for a white woman (Payne). Payne reluctantly agreed to do it. After Payne knocked on Smith's door and Smith began unlocking it, Anthony told Payne she could go back to the car. On her way back to the car, she heard a gunshot. When she turned, she saw Anthony running toward her with a gun. She testified that the gun looked like one she had previously seen Rommell carry on several occasions and put in the pocket of her coat when they

Applying these factors to the present case, we conclude that the admission of Rommell's statements to Regina Knox at the trial of William Anthony did not violate the Confrontation Clause because they carried particularized guarantees of trustworthiness. First, Rommell made express assertions of past fact as he detailed the events of the evening leading up to Smith's murder. Second, Rommell had personal knowledge of the facts asserted because, by all accounts, he was present at the apartment when the murder occurred. Third, the likelihood that Rommell's recollection of the facts was faulty is extremely remote because they were made on the evening of the murder, shortly after it occurred. Fourth, it is unlikely that Rommell fabricated the facts because he voluntarily made the statements to his wife in the privacy of their home and they were against his penal interest. Such statements made to a family member or perceived ally, in confidence, have previously been deemed sufficiently trustworthy. *See Tocco*, 200 F.3d at 416; *Bruton v. Phillips*, 64 F.Supp.2d 669, 680 (E.D. Mich. 1999). Rommell apparently viewed his wife as an ally because he asked for her assistance in creating an alibi for him and concealing the crime.

Although ultimately concluding that Rommell's statements to Regina Knox bore sufficient indicia of reliability, the district court expressed concern with regard to the fourth *Dutton* factor. The court, quoting *Lee v. Illinois*, 476 U.S. 530, 544 (1986), pointed out that a "codefendant's confession is presumptively unreliable as to the passages detailing the defendant's conduct or culpability because those passages may well be the product of the codefendant's desire to shift or spread blame, curry favor, avenge himself, or divert attention to another." These concerns, however, are most salient where a codefendant implicates a defendant in his confession to authorities, who have the discretion to treat the codefendant leniently and to pursue charges against his accomplice. In this case, however, Rommell implicated Anthony in describing the crime to his wife on the night of the murder. It is unlikely that he concocted this story and shared it with his wife in order to secure some future legal benefit.

to prove that Rommell actually believed Anthony intended to talk to Smith about dropping the charges or that he truly believed Smith would not open the door for Anthony; rather, the statements were admissible to show why Payne went to Smith's apartment with Anthony. Rommell's threat to harm Payne was admissible to show why she hesitated to contact police sooner. Because these out-of-court statements do not constitute hearsay, Payne could properly testify to them without any resulting violation of Anthony's constitutional right to confront adverse witnesses.

### B.

The district court concluded that the admission of Regina Knox's testimony regarding her husband's out-of-court statements did not violate federal law because it bore sufficient indicia of reliability. We agree. Out-of-court statements that do not fit within a firmly rooted hearsay exception do not violate the Confrontation Clause if they possess "particularized guarantees of trustworthiness."[4] *United States v. Tocco*, 200 F.3d 401, 416 (6th Cir. 2000) (quoting *Lilly*, 527 U.S. at 126). The guarantees must be inherent in the circumstances surrounding the testimony itself; it is insufficient that other evidence corroborates it. *Id.*

In *Dutton*, the Supreme Court identified factors "widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant." 400 U.S. at 89. These factors include: (1) whether the hearsay statement contained an express assertion of past fact, (2) whether the declarant had personal knowledge of the fact asserted, (3) whether the possibility that the statement was based upon a faulty recollection is remote in the extreme, and (4) whether the circumstances surrounding the statement make it likely that the declarant fabricated the assertion of fact. *Dutton*, 400 U.S. at 88-89.

---

[4] Neither party disputes that Rommell was unavailable to testify, presumably because he would have exercised his Fifth Amendment right against compelled self-incrimination.

went to "the bar." Anthony grabbed Payne by the arm, said "move, bitch," and ran to the car. As the four drove away from the apartment complex, Payne opened the door and vomited. Upon seeing this, Rommell twisted her arm and threatened to kill her if he even thought she would tell anyone what occurred that evening, adding "right, guys?" – to which Anthony responded, "You got that right, cuz."

John Knox testified that, on the evening of Smith's murder, he accompanied Rommell, Payne and Anthony on what he believed to be a marijuana run. The group stopped at Smith's apartment complex, but he did not see which apartment Payne and Anthony visited. John did not speak with Rommell, Anthony or Payne after leaving the complex and did not listen to the conversation. Instead, he listened to loud music on the car stereo. John further testified that, after he and Rommell were in custody, Rommell told John that he wanted John to implicate Payne and Anthony in Smith's murder, and to tell the police that he (Rommell) was not at the scene. John refused to change his story and Rommell threatened to harm his children.

Rommell's wife, Regina Knox, testified that Rommell returned home at about 9:15 p.m. the evening of Smith's murder. He told her that he went to Smith's apartment along with his brother, Payne and Anthony. He explained that Payne and Anthony went to Smith's door and Payne asked to use the telephone. He said that Anthony stepped from the side of the apartment and shot Smith in the face through the glass. He told Regina that he planned to pay Anthony and Payne $250 each for going along with the plan, and further asked Regina to lie in order to create an alibi for his whereabouts during the time of the murder. He asked her help in searching the house for stray bullets in the event the house was eventually searched. He told Regina that he wanted Smith shot because he did not want to go to jail. On January 7, 1995, Regina contacted the police and made a videotaped statement to Detective Brian Lacy because she was scared and believed that Rommell should be punished. She further testified that Rommell contacted her numerous

times while awaiting trial to ask her to lie for him, and she identified the murder weapon as belonging to her husband.

William Anthony presented an alibi defense. His uncle and aunt testified that, on the evening of Smith's murder, Anthony was at home with them from the late afternoon through 9:00 p.m.

Following his conviction, Anthony filed a direct appeal asserting, among other arguments, that the state failed to lay a proper foundation to admit the hearsay statements of Rommell Knox and that, even with a proper foundation, the hearsay evidence was improperly admitted. The appellate panel determined that Mary Payne testified to the following two out-of-court statements:

> (1) that Rommell asked her to knock on Smith's door so that appellant could talk to her about dropping the charges; and (2) that Rommell threatened Payne's life if she told anyone what happened there that night.

*State v. Anthony*, Franklin App. No. 96APA12-1721, 1997 WL 629983, at *5 (Ohio App. Oct. 9, 1997). The appeals court found that the prosecution introduced the first statement before establishing the existence of a conspiracy between Rommell and Anthony, but concluded:

> The premature introduction of the statement, although improper, was not prejudicial to [Anthony] because the state could have elicited the statement from Payne at the end of her testimony instead of in the middle.

*Id.* That said, the appeals court also concluded that the testimony would have been admissible to explain Payne's actions. *Id.* The appellate court summarily dismissed Anthony's argument regarding the admissibility of Rommell's statements, as introduced through the testimony of Regina Knox:

> Likewise, appellant's arguments that Regina Knox (who testified later [than Payne]) testified prior to the state

Finally, error in admission of hearsay testimony by the trial court is harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. "Under this standard, habeas petitioners ... are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *McGhee v. Yukins*, 229 F.3d 506, 512 (6th Cir. 2000) (quoting *Brecht*, 507 U.S. at 637).

### A.

In the instant case, Mary Payne testified to two out-of-court statements made to her by Rommell Knox. First, that Rommell asked her to accompany Anthony to Smith's apartment to knock on the door so that Anthony could talk to Smith about dropping the charges against Rommell, and that he needed her to do it because Smith would not open the door for a black man. Second, that Rommell threatened her life if she told anyone what happened that evening.

The definition of hearsay is the same under both the Ohio and Federal Rules of Evidence. That is, hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ohio Evid. R. 801(C); Fed. R. Evid. 801(c). Evidence is not hearsay if it is not offered to prove the truth of the matter asserted. *See, e.g., State v. Smith*, 87 Ohio St.3d 424, 428, 721 N.E.2d 93, 102 (2000); *State v. Geboy*, 145 Ohio App.3d 706, 719; 764 N.E.2d 451, 461 (2001); *Stalbosky v. Belew*, 205 F.3d 890, 895 (6th Cir. 2000); *United States v. Branham*, 97 F.3d 835, 851 (6th Cir. 1996); *United States v. Johnson*, 71 F.3d 539, 543 (6th Cir. 1995). In the case *sub judice*, Payne was a participant in the events that occurred at Smith's apartment on the night of the murder. As such, she witnessed and heard everything about which she testified. Her testimony did not constitute hearsay because the out-of-court statements were admissible to explain her actions on the night of the murder and her inaction in approaching the authorities afterwards. For instance, Rommell's statements to Payne were not necessarily offered

independent proof."[3]   *State v. Carter*, 72 Ohio St.3d 545, syllabus ¶ 3, 651 N.E.2d 965 (Ohio 1995).  The Supreme Court of Ohio has held, however, that the premature admission of coconspirator statements prior to the establishment of the conspiracy is harmless error so long as independent proof of the conspiracy was admitted into evidence before the case was submitted to the jury.  *State v. Jalowiec*, 91 Ohio St.3d 220, 226, 744 N.E.2d 163, 173 (Ohio 2001).

Finding that a conspiracy does not necessarily end with the commission of a crime, the Ohio Supreme Court has interpreted the language of Rule 801(D)(2)(e) to permit the admission of out-of-court statements of a coconspirator made during concealment of the crime.  *State v. Shelton*, 51 Ohio St.2d 68, syllabus ¶ 2, 364 N.E.2d 1152 (1977).  In this respect, the Ohio rule differs from the traditional common law formulation of the coconspirator exception, which does not include statements made during the concealment phase of the crime. *Dutton*, 400 U.S. at 81 (citing *Lutwak v. United States*, 344 U.S. 604 (1953); *Krulewitch v. United States*, 336 U.S. 440 (1949)).  Even if the out-of-court statement is not firmly rooted to a hearsay exception, the statement may yet be admitted, but only upon "a showing of particularized guarantees of trustworthiness." *Hill*, 199 F.3d at 846 (quoting *Ohio v. Roberts*, 448 U.S. at 65).  The "particularized guarantees" are determined based upon the totality of circumstances, restricted to those that surround the making of the statement and render the declarant particularly worthy of belief. *Wright*, 497 U.S. at 816.

---

[3]To admit a statement under Rule 801(D)(2)(e), five conditions must be met: (1) a conspiracy must exist; (2) the defendant must have been a participant in the conspiracy; (3) the declarant must have been a participant in the conspiracy; (4) the statement to be introduced must have been made in the course of the conspiracy; and (5) the statement must have been in furtherance of the conspiracy. *State v. Milo*, 6 Ohio St.3d 19, 23, 451 N.E.2d 1253, 1257 (1982), *abrogated on alt. grounds by State v. Adkins*, 136 Ohio App.3d 765, 737 N.E.2d 1021 (2000).

having presented sufficient evidence of a conspiracy are not well-taken.

*Id*.  The Supreme Court of Ohio denied Anthony's request for leave to appeal, finding no substantial constitutional question.  *State v. Anthony*, 81 Ohio St.3d 1442, 690 N.E.2d 15 (1998).  His petition for postconviction relief was also denied.

On habeas review, Anthony again argued that the state failed to lay a proper foundation for admission of the hearsay statements attributed to Rommell Knox.  The district court determined that Payne's recounting of Rommell's statements did not deny Anthony his Sixth Amendment right to confront witnesses because they did not constitute hearsay "in light of the circumstances present."  It further determined that the admission of Rommell's out-of-court statements to Regina Knox also did not violate the Confrontation Clause because, under *Dutton v. Evans*, 400 U.S. 74, 78 (1970), they bore sufficient indicia of reliability based on the fact that they were made shortly after the crime within the confines of the husband-wife relationship, were uttered voluntarily, and were against Rommell's penal interest.  Finally, citing *Brecht v. Abrahamson*, 507 U.S. 619 (1993), and *Kotteakos v. United States*, 328 U.S. 750 (1946), the district court noted that even if Regina's testimony constituted impermissible hearsay, the statements did not have a "substantial and injurious effect" on the jury's verdict.

## II.  Standard of Review

We review *de novo* a district court's dismissal of a § 2254 petition, but review the court's factual findings for clear error. *Carson v. Burke*, 178 F.3d 434, 436 (6th Cir. 1999).  The district court is not authorized to grant a habeas petition with respect to any claim that was adjudicated on the merits in the state courts unless the adjudication resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law; or (2) was based on an unreasonable determination of the facts in light of the evidence presented to the state courts.  28 U.S.C. § 2254(d).  Under the "contrary to" clause, a federal habeas court may

grant the petition if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the petition if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. *Id.*

### III.  Analysis

The question presented is whether the out-of-court statements of Rommell Knox, admitted through the testimony of Mary Payne and Regina Knox during the trial of William Anthony, violated Anthony's Sixth Amendment right to confront witnesses. The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI; *Idaho v. Wright*, 497 U.S. 805, 813 (1990). The purpose of the Clause is to "ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Lilly v. Virginia*, 527 U.S. 116, 123-24 (1999) (internal quotation omitted). Such testing is not possible where the government endeavors to present the hearsay statements of an out-of-court declarant through the testimony of a witness. *Lilly*, 527 U.S. at 124 (citing *California v. Green*, 399 U.S. 149, 158 (1970)).

The Confrontation Clause, read literally, would bar the use of all out-of-court statements of a declarant who is not present at trial; however, the Supreme Court has rejected such an extreme interpretation of this Clause. *United States v. Ismoila*, 100 F.3d 380, 391 (5th Cir. 1996), *cert. denied*, 520 U.S. 1219 (1997) (citing *Idaho*, 497 U.S. at 814; *Sherman v. Scott*, 62 F.3d 136, 140 (5th Cir. 1995), *cert. denied*, 516 U.S. 1093 (1996)). In *Idaho*, for example, the Supreme Court noted that the Confrontation Clause "does not necessarily

prohibit the admission of hearsay statements against a criminal defendant, even though the admission of such statements might be thought to violate the literal terms of the Clause." 497 U.S. at 813 (citing *Mattox v. United States*, 156 U.S. 237, 243 (1895); *Pointer v. Texas*, 380 U.S. 400, 407 (1965)). The Supreme Court has established a two-part test for determining whether hearsay is admissible under the Confrontation Clause. *Hill v. Brigano*, 199 F.3d 833, 845-46 (6th Cir. 1999), *cert. denied*, 529 U.S. 1134 (2000) (citing *Ohio v. Roberts*, 448 U.S. 56, 65 (1980)). Hearsay evidence is admissible only where (1) the declarant is unavailable, and (2) the hearsay statement bears adequate "indicia of reliability." *Hill*, 199 F.3d at 846 (citing *Ohio v. Roberts*, 448 U.S. at 65). Reliability is inferred where the out-of-court statement is subject to a firmly rooted hearsay exception. *Id*. The Supreme Court has determined that if the out-of-court declarant is a coconspirator of the defendant, the prosecution need not establish the unavailability of the declarant, *United States v. Inadi*, 475 U.S. 387, 391 (1986), or the reliability of his statements, *Bourjaily v. United States*, 483 U.S. 171 (1987). However, the *Bourjaily* holding is limited to those statements that fall within the traditional common law formulation of the hearsay exception. At common law, the hearsay exception that allows evidence of an out-of-court statement of one conspirator to be admitted against his fellow conspirator applies only if the statement was made during the course and in furtherance of the conspiracy. *Dutton*, 400 U.S. at 81.

The Ohio Rules of Evidence provide that a statement is not hearsay if it is made "by a coconspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy." Ohio Evid. R. 801(D)(2)(e). Under Ohio procedure, the statement of a coconspirator is not admissible until "the proponent of the statement has made a prima facie showing of the existence of the conspiracy by