*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0189p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 04-5359

JEREMY SMITH,

*Defendant-Appellant.*

>

---

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 03-20103—Jon Phipps McCalla, District Judge.

Argued: March 18, 2005

Decided and Filed: April 22, 2005

Before: DAUGHTREY and CLAY, Circuit Judges; GRAHAM, District Judge.[*]

---

**COUNSEL**

**ARGUED:** K. Jayaraman, Memphis, Tennessee, for Appellant. V. Rae Oliver, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee. **ON BRIEF:** K. Jayaraman, Memphis, Tennessee, for Appellant. V. Rae Oliver, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

---

**OPINION**

---

CLAY, Circuit Judge. Defendant Jeremy Smith appeals from the 120 month sentence entered by the district court following his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Because the district court's sentencing calculation under the then-mandatory United States Sentencing Guidelines violated Defendant's Sixth Amendment rights, we **VACATE** Defendant's sentence and **REMAND** for resentencing in light of *United States v. Booker*, 543 U.S. ___, 125 S. Ct. 739 (2005).

---

[*]The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

1

# I.  BACKGROUND

## A.      The Offense

On October 22, 2002, Memphis police officers Phillip Logan and Kevin Perry responded to a robbery report at the home of an individual named Ernesto Piez.  Piez claimed that a woman had come to his house and attempted to solicit money for sex by lifting her skirt and asking "do you want?"  Piez told the woman that he did not have any money.  Suddenly, a man emerged from a white car, came to the door, and asked if he could use the telephone.  The man then drew a pistol, grabbed Piez's hair and said "give me money, give me money."  Piez told the man that he did not have any money, and according to Piez, the woman gave the man "ten pesos."  The man searched Piez's pockets, then left in the white car.  Piez, believing that the woman was actually with the man, chased the woman from his house with a pair of scissors.

After hearing Piez's story, Officers Logan and Perry contacted a neighborhood informant and asked him whether he knew of anyone who met the description of the man and woman.  The informant gave the officers information that led them to a nearby house on Wrenwood Street, which the officers knew from experience to be a drug house.  After arriving at the Wrenwood house, the officers obtained consent to search from a female occupant.  Three men and two women were present at the time of the search, which uncovered a gun matching Piez's description of the weapon brandished by the male robber.  The gun was found in close proximity to one of the male occupants of the Wrenwood house, who was later identified as Defendant.

Following the search, Officer Logan brought Piez to the Wrenwood house.  The occupants of the house were lined up in the driveway, and Piez was able to observe them while seated in a police car.  Piez identified a man, Defendant, and a woman, Angela Elliot, as the individuals who attempted to rob him.  Both Defendant and Elliot were arrested.

## B.      Defendant's Trial and Sentencing

Defendant was indicted and tried solely under 18 U.S.C. § 922(g), felon in possession of a firearm.  At trial, the jury heard testimony relating to attempted robbery, however on more than one occasion, the district court noted that the only issue before the jury was Defendant's guilt as a felon in possession of a firearm.  For example, during defense counsel's cross-examination of Officer Perry, the court explicitly stated that "the only two issues before the jury are the knowing possession of a firearm question and then, of course, the interstate commerce question . . . it's not a robbery case."  (Joint Appendix ("J.A.") at 54, ¶ 11-16, 19.)  During defense counsel's cross-examination of Piez, the court once again noted that "we're just here to decide whether or not there was a firearm.  This is not a case about whether or not there was a robbery or an aggravated assault or anything else."  (J.A. at 68, ¶ 9-12.)[1]

Despite the court's statements regarding robbery, the jury heard testimony from Defendant's co-conspirator in the alleged robbery, Angela Love.  Love is not Angela Elliot, the woman identified by Piez as one of the robbers, and Love was not present at the Wrenwood house on the day of the robbery or arrested for the robbery.  Love testified that she and Defendant went to Piez's house to get money, and that the gun and white car they used belonged to her boyfriend, Jeff Edmondson.  Love also testified that she knew Piez prior to the robbery attempt, and that she and Piez had used drugs together several times in the past.  Conversely, Piez testified that he did not know the woman who attempted to rob him, and he denied using drugs with Angela Love.  Piez was also unable to

---

[1]Additionally, during defense counsel's cross-examination of Officer Logan, the prosecutor objected to questioning relating to whether the officers were called to Piez's home for a robbery.  The district court sustained the objection "because of the nature of the charge in the case."  (J.A. at 26, ¶ 18.)

identify Defendant at trial as the man who attempted to rob him, although Piez did positively identify a photograph of Defendant taken at the time of his arrest.

The jury convicted Defendant under § 922(g). In preparation for sentencing, the probation department submitted a presentence report calculating Defendant's sentence under the Guideline for robbery, which calls for a base offense level of 20. U.S. SENTENCING GUIDELINES MANUAL § 2B3.1(a) (2002). The Guideline for firearms, § 2K2.1(c)(1)(A), states that where the defendant used or possessed a firearm in connection with the attempted commission of another offense, the district court is to apply the guideline for attempt, conspiracy, or solicitation, § 2X1.1, "in respect to that other offense, if the resulting offense level is greater than that determined" under § 2K2.1 generally. U.S.S.G. § 2K2.1(c)(1)(A). The presentence report determined that Defendant used a firearm in connection with an attempted robbery, and therefore applied the cross-reference to § 2X1.1; the application of § 2X1.1, in turn, led to the application of the robbery Guideline, which has a higher base offense level than the firearms Guideline. Coupled with Defendant's criminal history category of VI, the sentencing range using the robbery Guideline was 110 to 137 months. Because the statutory maximum sentence for § 922(g) is ten years,[2] the presentence report recommended a sentence of 120 months imprisonment.

Defendant filed written objections to the presentence report, arguing that because he was indicted and convicted of being a felon in possession of a firearm, and not robbery or attempted robbery, his sentence should be calculated under the firearm Guideline without cross-referencing the attempt, conspiracy, or solicitation Guideline. The firearm Guideline, § 2K2.1(a)(6)(A), has a base offense level of 14, and with Defendant's criminal history score it would have yielded a sentencing range of 37-46 months.

At the sentencing hearing before the district court, Defendant reiterated his argument that the district court had no basis for sentencing him under the robbery Guideline, given that he was neither charged with nor convicted of robbery. Defendant also argued that the evidence presented at trial would not support a finding that he committed or attempted to commit robbery, or alternatively, that he had a principal role in robbery. Defendant noted that although Love implicated him as her co-conspirator in attempted robbery, her statements that both the gun and car belonged to her boyfriend, as well as her claim that she had "gotten high" with Piez several times, cast doubt upon Defendant's role in the attempted robbery. Defendant also pointed out Piez's inability to identify him in the courtroom, and the inconsistency between Love's testimony and Piez's regarding drug use. Defendant surmised that in applying the robbery guideline, the court was obviously taking Love's and Piez's testimony into account; given the problems with those testimonies, Defendant argued that the district court could not apply the robbery Guideline.

Unpersuaded by Defendant's arguments, the district court adopted the sentencing calculation set forth in the presentence report. The court opined that "the facts fully support the facts as set out in the presentence report . . . [it] is appropriate for the robbery guideline to be used in this particular case." (J.A. at 83). Because of Defendant's lengthy criminal history, the court imposed the 120 month statutory maximum sentence. Defendant now appeals that sentence.

## II.   DISCUSSION

Because Defendant failed to raise a Sixth Amendment argument before the district court, we apply plain error review to his contention that his sentence runs afoul of *Booker*. *See United States v. Davis*, 397 F.3d 340, 350 (6th Cir. 2005). In order to find plain error, we must find: "(1) that an error occurred in the district court; (2) that the error was plain, *i.e.*, obvious or clear; (3) that the

---

[2]18 U.S.C. § 924(a)(2) provides, "Whoever knowingly violates subsection . . . (g) . . . of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both."

error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings." *United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998) (citing *United States v. Johnson*, 520 U.S. 461, 467 (1997)).

As to the first two prongs of the plain error test, our post-*Booker* decisions hold that where the district court sentenced the defendant in manner that violated the Sixth Amendment, an error occurred which was plain or obvious. *See, e.g.*, *United States v. Milan*, 398 F.3d 445, 451(6th Cir. 2005); *United States v. Oliver*, 397 F.3d 369, 378-80 (6th Cir. 2005). In the present case, the district court's finding that Defendant attempted to commit robbery increased his sentencing range from the 37-46 month sentence authorized by the firearm Guideline to 110-137 months imprisonment under the robbery Guideline. Defendant never admitted to the robbery, and although the jury heard some testimony relating to Defendant's participation in an attempted robbery, it made no finding that Defendant committed any crime other than the one he was charged with, felon in possession of a firearm. Furthermore, "the fact that the jury heard such evidence is immaterial," as "'it is not the province of this Court to divine the jury's interpretation of the evidence.'" *United States v. Hines*, 398 F.3d 713, 721 (6th Cir. 2005) (quoting *S.E.C. v. Yun*, 148 F. Supp. 2d 1287, 1297 (M.D. Fla. 2001)). Defendant's Sixth Amendment rights were thus "violated during the sentencing process because the district court relied on judge-found facts to impose [a sentence] that could not have been imposed based solely on facts found by the jury beyond a reasonable doubt." *United States v. McDaniel*, 398 F.3d 540, 548 (6th Cir. 2005). Therefore, a plain or obvious error occurred at sentencing.

We also find that the error affected Defendant's substantial rights, because "the district court unconstitutionally increased [Defendant's] sentence beyond that which was supported by the jury verdict or [Defendant's] criminal history." *Oliver*, 397 F.3d at 379-80. By finding that Defendant committed attempted robbery, the district court more than doubled, and possibly tripled, the sentence Defendant would have received under a straightforward application of § 2K2.1. As the district court's fact-finding clearly determined the length of Defendant's sentence, we find that the third prong of the plain error test has been met. *See United States v. Cotton*, 535 U.S. 625, 632 (2002) (stating that a finding that the defendant's substantial rights have been affected "usually means that the error must have affected the outcome of the district court proceedings"); *see also McDaniel*, 398 F.3d at 549 (concluding that defendants' substantial rights were affected at sentencing because they received sentences two and three times longer than "the maximum Guidelines sentence supported by the jury's fact-finding"); *Milan*, 398 F.3d at 451 (finding that defendant's substantial rights were affected because "the error *determined* the outcome of the district court proceedings in the sense that the sentence [defendant] received . . . depended on the consideration of facts he did not admit and which were not proven to a jury") (emphasis in original).

Finally, we find that the district court's fact-finding, in violation of the Sixth Amendment, seriously affected the fairness, integrity or public reputation of the judicial proceedings. Federal criminal sentencing "has now been substantially altered" by *Booker*. *United States v. Barnett*, 398 F.3d 516, 530 (6th Cir. 2005); *cf. United States v. Hughes*, 396 F.3d 374, 380 (4th Cir. 2005) (noting that "*Booker* wrought a major change in how federal sentencing is to be conducted," and concluding that plain error test was met). Failing to remand Defendant's sentence "'would diminish the integrity and public reputation of the judicial system and would also diminish the fairness of the criminal sentencing system.'" *Oliver*, 397 F.3d at 380 (quoting *United States v. Bostic*, 371 F.3d 865, 877 (6th Cir. 2004)). We therefore must remand Defendant's case for resentencing.

## III.   CONCLUSION

For the reasons set forth above, we **VACATE** Defendant's sentence and **REMAND** the case for resentencing in light of *Booker*.