**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 05a0932n.06**
**Filed: November 28, 2005**

**No. 04-1420**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,     )
     )
  Plaintiff-Appellee,     )
     )     ON APPEAL FROM THE UNITED
  v.     )     STATES DISTRICT COURT FOR
     )     THE WESTERN DISTRICT OF
JOSE LUIS ALEMAN-RAMOS,     )     MICHIGAN
     )
  Defendant-Appellant.     )
     )

_____

BEFORE: CLAY, GIBBONS, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant, Jose Luis Aleman-Ramos ("Aleman-Ramos"), appeals his conviction and sentence pursuant to 18 U.S.C. § 922(g)(5)(A) for the possession of a firearm as an illegal alien. Aleman-Ramos was convicted on December 12, 2003, after a jury trial and sentenced to sixty-three months imprisonment to be followed by a three-year period of supervised release. Aleman-Ramos contends that the district court abused its discretion when it admitted a hearsay statement as evidence, that the district court erred in sentencing when it made a factual finding that increased defendant's sentencing range, and that the resulting conviction was unsupported by the weight of the evidence. We affirm defendant's conviction, vacate his sentence, and remand for resentencing pursuant to the advisory guidelines.

I.

On September 28, 2003, Ronald Scirovecz, an officer of the Grand Rapids Rifle and Pistol Club in Wyoming, Michigan, heard four to five gunshots fired from a wooded area north of the club that he believed were discharged from a small caliber handgun. Fifteen to twenty seconds later, Scirovecz observed a man walk from the direction of the gunshots and enter a gray Mazda MPV van. According to Scirovecz, the man was possibly Hispanic and wore dark pants and a white shirt. Several seconds later, the man held a nickel-plated semi-automatic pistol out of the window as if he were examining it in the sunlight. Scirovecz immediately called 911 and reported the incident. Scirovecz also reported that there was a male child in the van who was approximately nine or ten years old. The van remained in the parking lot for another minute, then drove away.

Officer Robert Aungst of the Wyoming Police Department was dispatched to the area to investigate the call. He was advised of the gray or silver foreign van with a child in the front seat, the handgun, the shots, and the male driving the vehicle. As Officer Aungst drove northbound, he observed a gray van driven by Aleman-Ramos traveling southbound, away from the area of the club. The van appeared to match the description given by dispatch, and he followed the van into a private parking lot. The van briefly pulled into a parking space, pulled out, and turned back on the street in the direction that it had come from. Officer Aungst followed the van and initiated a traffic stop.

Officer Aungst approached the vehicle, requested proof of insurance, license, and registration, and questioned Aleman-Ramos about his direction. Aleman-Ramos appeared nervous. A boy in the passenger seat would not make eye contact with Officer Aungst and appeared to have

his hands cupped around his waist. Officer Aungst requested that Aleman-Ramos step out of the van. Simultaneously, a second police officer, Officer Mawby, walked up to the passenger door of the van. Aleman-Ramos stepped out of the van and Officer Aungst took him to the rear of the van where Aleman-Ramos consented to a custodial search of the vehicle. After Aleman-Ramos was patted down for weapons, Officer Aungst left him at the rear of the van with a third officer and returned to the driver's side door to speak with the child passenger. Eventually, the boy, Jose Luis Aleman-Ramos, Jr. ("Aleman-Ramos, Jr."), unlocked the passenger door and exited towards Officer Mawby with his hands clasped at his waist. Officer Mawby repeatedly asked the boy what he held in his hands, but the boy did not respond and would not look at Officer Mawby. Officer Mawby lifted the boy's arms without resistance, and a small, silver pistol dropped to the ground. Officer Mawby advised the other officers that he had found a handgun and continued to search the boy. After he searched the boy, he placed Aleman-Ramos, Jr. in the back of his patrol car. At the trial, Officer Mawby recounted his colloquy with Aleman-Ramos, Jr., as follows:

> Q:     What did you talk to him about?
>
> A:     I asked him, I said, "Why do you have a pistol?"
>
> Q:     What did he say, if anything?
>
>        ***
>
> The Witness:  He said that he got it from his father.
>
>        ***
>
> Q:     Did you ask him anything further concerning the pistol?

A:   I made a statement to him that he wasn't supposed to be shooting a pistol in town, and he said they weren't in town, they were in the forest.

Q:   Did he say why his dad was shooting the pistol?

A:   He told me that he was trying it out and it belonged to a friend. Trying it out to see if it worked I think is what he told me.

After Officer Aungst processed a background check of defendant with the Law Enforcement Information Network ("LEIN") and the National Crime Information Center ("NCIC"), he discovered that Aleman-Ramos had an outstanding immigration violation. Aungst then contacted Ronald Scirovecz, the 911 caller, and requested that he come to the scene. At the scene, Scirovecz repeated his story to the officers and identified the van. A law enforcement check on the gun revealed that it was stolen in Inkster, Michigan.

On October 8, 2003, a federal grand jury indicted Jose Luis Aleman-Ramos for the possession of a firearm as an illegal alien in violation of 18 U.S.C. § 922(g)(5). Defendant thereafter moved, in limine, to exclude his minor son's statements, which the court denied after a hearing. Following a two-day jury trial, defendant was convicted on December 12, 2003. On March 16, 2004, the district court sentenced Aleman-Ramos to sixty-three months of imprisonment to be followed by three years of supervised release. Defendant filed a timely notice of appeal.

## II.

First, defendant claims that the district court erred in ruling that the statements made by defendant's minor son qualify, pursuant to Fed. R. Evid. 803(2), as "excited utterances" and therefore an exception to the prohibition on hearsay. We agree that the trial court erred, but hold that the error was harmless.

- 4 -

We review all evidentiary rulings for an "abuse of discretion." *United States v. Arnold*, 410 F.3d 895, 898 (6th Cir. 2005) (citing *United States v. Schreane*, 331 F.3d 548, 564 (6th Cir. 2003), *cert. denied* 540 U.S. 973 (2003)); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997) ("We have held that abuse of discretion is the proper standard of review of a district court's evidentiary rulings.")). An abuse of discretion exists "when there is a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Arnold*, 410 F.3d at 898 (quoting *Schreane*, 331 F.3d at 564 (internal quotation marks omitted)). An abuse of discretion may also result if a district court relies on "clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *Id.* (internal quotation marks and citation omitted).

The statements at issue are clearly hearsay, namely, "statement[s], other than one[s] made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Defendant's son did not testify. The statements at issue were introduced into evidence through the testimony of Officer Mawby and used to prove that the defendant possessed a firearm. The district court admitted the statements pursuant to Fed. R. Evid. 803(2) as "statement[s] relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." For a statement to qualify as an excited utterance: (1) there must be an event startling enough to cause nervous excitement; (2) the statement must be made before there is an opportunity to contrive or misrepresent; and (3) the statement must be made while the person is under the stress of the excitement caused by the event. *United States v. Winters*, 33 F.3d 720, 722-23 (6th Cir. 1994); *Haggins v. Warden, Fort Pillow State Farm*, 715

F.2d 1050, 1057 (6th Cir. 1983). We have noted that "'the ultimate question is whether the statement was the result of reflective thought or whether it was a spontaneous reaction to an exciting event.'" *Haggins*, 715 F.2d at 1058 (quoting MCCORMICK'S HANDBOOK OF THE LAW OF EVIDENCE § 297 at 705-706 (2d ed. 1972)).

Here, the district court inappropriately relied on an unpublished and non-precedentially binding decision,[1] *United States v. Taylor*, No. 92-5120, 978 F.2d 1260, 1992 WL 322369, at *2-4 (6th Cir. Nov. 5, 1992) (unpublished), in denying defendant's motion to exclude Aleman-Ramos, Jr.'s statements. In *Taylor*, a panel of this court held that a seven-year-old's statement to a police officer describing the location of drugs qualified as an excited utterance. *Id.* Six police officers wearing bullet-proof vests with guns drawn had entered a room where several adults and children were present. *Id.* When an officer asked an adult where the drugs were located, the seven-year-old responded and took the officer to a closet where the drugs were kept. *Id.* The district court held, and we affirmed, that the child's statement qualified as an excited utterance. *Id.*

Several facts distinguish *Taylor* from this case. In particular, (1) Aleman-Ramos, Jr. was nine, whereas the boy in *Taylor* was seven; (2) only three officers were present in this case, whereas six were present in *Taylor*; (3) Aleman-Ramos, Jr.'s statements were made after a traffic stop, whereas in *Taylor,* the officers entered the defendant's home; and (4) unlike *Taylor*, no guns or bullet-proof vests were present in this case.

---

[1]Because an unpublished opinion is not precedentially binding under the doctrine of stare decisis, its reliance and citation are disfavored except for the purposes of establishing res judicata, estoppel, or the law of the case. 6 Cir. R. 28(g).

Most importantly, Aleman-Ramos, Jr. made the statements in response to officer questioning after he was placed in the rear of a police vehicle. During the initial encounter, he refused to answer questions several times and kept his eyes fixed straight ahead. This description does not comport with the concept of a "spontaneous reaction to [an] exciting event." *Haggins*, 715 F.2d at 1058. Based on this sparse record, which did not include an evidentiary hearing, the second and third factors lack evidentiary support. Specifically, insufficient evidence exists to establish that the statement was made in sufficient proximity to the startling event, or that the statement was a clear result of the stress caused by the event. Accordingly, on this record, we conclude that the trial court erred in admitting the statements as excited utterances.

## III.

We must now consider whether the district court's erroneous admission of Aleman-Ramos, Jr.'s statements affected defendant's substantial rights. Although defendant objected to the admission of his son's statements as "excited utterances," he did not object to the admission on Sixth Amendment grounds.[2] "When the defendant has made a timely objection to an error and Rule 52(a)

---

[2]In light of *Crawford v. Washington*, 541 U.S. 36 (2004), however, we permitted additional briefing in order to address this issue. In *Crawford*, the Supreme Court ruled "that out-of-court statements that are 'testimonial' and made by a witness not present at trial are admissible *only* if the declarant is unavailable *and* the defendant had a prior opportunity to cross-examine." *United States v. Arnold*, 410 F.3d 895, 902 (6th Cir. 2005) (emphasis in original) (citing *Crawford*, 541 U.S. at 68). Here, the government contends both that the statements were not testimonial, and that Aleman-Ramos had an opportunity to cross-examine because Aleman-Ramos, Jr. was subpoenaed and present at the trial.

We have previously recognized that "testimonial" statements result from prior testimony, responses to formal police interrogations, and "'statements that declarants would reasonably expect to be used prosecutorially.'" *Arnold*, 410 F.3d at 902 (quoting *Crawford* 541 U.S. at 68). Moreover,

applies, a court of appeals normally engages in a specific analysis of the district court record–a so-called 'harmless error' inquiry–to determine whether the error was prejudicial." *United States v. Olano*, 507 U.S. 725, 734 (1993). When a defendant has not made a timely objection, we review the district court's error for plain error. *Id.* at 733-34. Plain error is "the same kind of inquiry, with one important difference: It is the defendant rather than the government who bears the burden of persuasion with respect to prejudice." *Id.* Under both error inquiries, the admission of Aleman-Ramos, Jr.'s statements must have materially affected the verdict. *United States v. Hernandez*, 227 F.3d 686, 696 (6th Cir. 2000); *Anthony v. DeWitt*, 295 F.3d 554, 562 (6th Cir. 2002) ("[A]dmission of hearsay testimony by the trial court is harmless if it did not have a 'substantial and injurious effect or influence in determining the jury's verdict.'" (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

---

although the Supreme Court has not provided a precise definition for what comprises a "testimonial" statement, we have explained that the decisive inquiry should be "'whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime.'" *Arnold*, 410 F.3d at 903-04 (quoting *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004)).

In this case, although whether a reasonable nine-year-old boy would realize that the statements likely would be used in the investigation or prosecution of the crime is debatable, Aleman-Ramos, Jr. made the statements in response to questions by a police officer who was clearly investigating Aleman-Ramos and Aleman-Ramos, Jr. That fact is dispositive; in *Crawford*, the Supreme Court found a witness's tape-recorded statement made during a police interrogation "testimonial." *Crawford*, 541 U.S. at 53. The Court stated that "interrogations by law enforcement officers fall squarely within [the] [] class [of testimonial hearsay]." *Id.*; *cf. United States v. Gibson*, 409 F.3d 325, 338 (6th Cir. 2005) (describing statements as non-testimonial where the "statements were not made to the police or in the course of an official investigation . . . . [nor in an attempt] to curry favor or shift the blame . . . ."). Aleman-Ramos, Jr.'s statements were made in response to a police interrogation and were therefore "testimonial" and subject to the Confrontation Clause pursuant to *Crawford*.

We conclude that the admission of the hearsay statements did not materially affect the verdict; in other words, the preserved evidentiary error was harmless error, while the unpreserved constitutional error did not affect defendant's substantial rights. The government presented compelling evidence to establish Aleman-Ramos's possession of a firearm without consideration of the son's statements. In particular, at trial, the government presented eye-witness testimony that identified a Hispanic man in possession of a firearm who examined the weapon in the sunlight and drove away with a child passenger. The same witness described the suspect's vehicle in a 911 call and later identified Aleman-Ramos's vehicle at the scene of the arrest. Furthermore, there was strong evidence of constructive possession by Aleman-Ramos, as there was uncontroverted evidence that Aleman-Ramos's minor son and passenger had actual possession of the firearm in close proximity to his father at the time of arrest. Following our review of the record, we conclude that the admission of the son's statements was harmless error and that plain error affecting defendant's substantial rights did not occur. *Hernandez*, 227 F.3d at 696; *DeWitt*, 295 F.3d at 562-64.

IV.

Next, defendant argues that the evidence at trial was insufficient to sustain a guilty verdict that he was in possession of the firearm. We disagree. First, Aleman-Ramos did not make a Rule 29 motion for a judgment of acquittal at the close of the trial. The failure to make a Rule 29 motion constitutes a waiver of objections to the sufficiency of the evidence absent a showing of a "manifest miscarriage of justice." *United States v. Price*, 134 F.3d 340, 350 (6th Cir. 1998) (internal citation omitted). A miscarriage of justice exists "only if the record is devoid of evidence pointing to guilt." *Id.* As discussed above, the record reflects strong evidence of guilt. Second, even if Aleman-Ramos

had made a Rule 29 motion at the appropriate time, "[w]hen reviewing the sufficiency of the evidence to support a criminal conviction, the 'relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Wood*, 364 F.3d 704, 716 (6th Cir. 2004) (emphasis in original) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

The elements for conviction pursuant to 18 U.S.C. § 922(g)(5)(A) are: (1) the defendant was an illegal alien, (2) who knowingly possessed a firearm, and (3) the firearm traveled in or affected interstate commerce. The first and third elements are not in dispute. The second element, knowing possession, may be sustained by evidence of "either actual or constructive possession." *Arnold*, 410 F.3d at 904. "Both actual and constructive possession may be proved by either direct or circumstantial evidence." *Id.* (quoting *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973)). The government presented evidence that an individual possessed a firearm who drove away in the van that Aleman-Ramos was driving, near the area where Aleman-Ramos was subsequently stopped. Further, the government presented evidence that a firearm was present in the van that Aleman-Ramos was driving. Finally, officer testimony reflects that a firearm dropped from the shirt of Aleman-Ramos's minor son and passenger. Based on these facts, viewed in a light most favorable to the prosecution, any rational trier of the facts could have found that Aleman-Ramos both actually and constructively possessed the firearm. Accordingly, based on the evidence presented at trial, there was neither a "manifest miscarriage of justice," nor could Aleman-Ramos sustain the lesser burden outlined in *Wood*.

V.

Aleman-Ramos received a two-level upward adjustment for enlisting the assistance of a minor pursuant to § 3B1.4 of the United States Sentencing Guidelines and a two-level upward adjustment for possessing a stolen firearm pursuant to U.S.S.G. § 2K2.1(b)(4). Neither fact was adjudicated by a jury or admitted by Aleman-Ramos. Although Aleman-Ramos specifically objected to the two-point upward adjustment for utilizing a minor, the district court nonetheless found by a "preponderance of the evidence that the defendant's son concealed the gun because the defendant wanted him to do so." A sentencing enhancement based on judge-found facts pursuant to mandatory guidelines system affects Aleman-Ramos's substantial rights.[3] *United States v. Oliver*, 397 F.3d 369 (6th Cir. 2005); *United States v. Smith*, 404 F.3d 1019, 1023-24 (6th Cir. 2005). Accordingly, Aleman-Ramos is entitled to resentencing pursuant to *United States v. Booker*, 125 S.Ct. 738 (2005).[4]

For these reasons, we affirm Aleman-Ramos's conviction, vacate Aleman-Ramos's sentence, and remand the case for resentencing in light of *Booker*.

---

[3]As in *Oliver*, some evidence of the facts underlying the sentence enhancement (the presence of defendant's minor son) was introduced at trial. The introduction of this evidence does not affect the Sixth Amendment analysis on appeal. *Oliver*, 397 F.3d at 378 n.2.

[4]Aleman-Ramos did not object to the upward adjustment for the stolen firearm. The government contends that, "[b]ecause Defendant did not contest factual support for the stolen firearm adjustment in his presentence report, it qualifies as an admission of those facts for Sixth Amendment purposes." As Aleman-Ramos is clearly entitled to resentencing based on the district court's finding that Aleman-Ramos utilized a minor to aid in the commission of a crime, the Court need not review his second sentencing objection.