NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0159n.06

Case No. 18-5730

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Mar 16, 2020
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| TRACY LYNN COPE, | ) | |
|     Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| RANDY LEE, Warden, | ) | |
| | ) | |
|     Respondent-Appellee. | | |

Before: MERRITT, MOORE, and MURPHY, Circuit Judges

**MERRITT, Circuit Judge.** Petitioner Tracy Lynn Cope appeals the district court's denial of his petition for habeas corpus under 28 U.S.C. § 2254. Cope's primary claim on appeal is that the State of Tennessee violated his Due Process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), at his trial back in 2007 by not disclosing that one of its witnesses, Debbie Callahan, served briefly as a confidential informant in an unrelated case about six months before Cope's trial. We agree with the Tennessee trial and appellate courts and the district court below that the non-disclosure of witness Callahan's status as a confidential informant was not material to Cope's later trial.

## I.

The Supreme Court in *Strickler v. Greene*, 527 U.S. 263 (1999), stated the following about *Brady* claims:

> "[T]here is never a real '*Brady*' violation unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict. There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."

*Id.* at 281–82. Because there is not a reasonable probability that the evidence concerning Callahan's status as a confidential informant would have produced a different verdict in Cope's trial, we hold that Cope suffered no prejudice and thus affirm the district court's denial of the writ.

Although this case involves Cope's procedural rights as a criminal defendant, we provide a brief factual summary, and mention further facts where relevant. This habeas case arises out of a bizarre factual context that spanned from shortly after 10:00 p.m. on August 28, 2005, until around 4:30 a.m. on the morning of August 29, 2005, in the city of Kingsport, Tennessee. In short, Cope, who was delirious from not sleeping for several days and smoking cocaine, forced his girlfriend, Amanda Wilson, and another female, Jakia Ford, from Wilson's apartment to her van. Cope drove Wilson and Ford around Kingsport for a few hours, eventually letting Ford get out of the van, and then drove Wilson to Callahan's apartment. While there, Cope forced Wilson and Callahan to sit and stand in various places in the apartment and attempted to force them to undress. Callahan eventually ran out of the apartment, and Kingsport Police Department officers arrived shortly thereafter. For a detailed factual background, see *State v. Tracy Lynn Cope*, No. E2009-00435-CCA-R3-CD, 2010 WL 2025469, at *1–3 (Tenn. Crim. App. May 20, 2010), *perm. app. denied* (Tenn. Sep. 22, 2010). But we note that the Tennessee court mistakenly said that the officer testified that he saw Cope holding Callahan in a chokehold; instead, the officer testified that Cope held *Wilson* in a chokehold.

On May 2, 2007, a Sullivan County, Tennessee, jury convicted Cope of one count of especially aggravated kidnapping, one count of aggravated kidnapping, and one count of false imprisonment. [R. 9-1 at 10–12]  At trial, the State called four witnesses, two of which were Callahan and Wilson.  Callahan and Wilson told largely the same story, with a few differences about the exact sequence of events inside Callahan's apartment.

On June 27, 2007, Cope was sentenced to a total of forty years' imprisonment. [*Id.*]  The Tennessee Court of Criminal Appeals affirmed the judgment on direct appeal, and the Tennessee Supreme Court denied Cope permission to appeal.  *Cope*, 2010 WL 2025469.

While Cope was incarcerated, another inmate named Arthur Harris, told Cope on November 21, 2012, that Callahan served as a confidential informant for the Kingsport Police Department in Harris's case. [R. 9-17 PageID# 958–62]  Police records from Harris's case revealed that on January 16, 2007, Callahan agreed to purchase $160.00 worth of crack-cocaine from Harris. [R. 9-17; Pet.'s Br. at 24]

On February 7, 2013, Cope filed a motion for consideration of post-judgment facts in the Tennessee Supreme Court, asserting that the State did not disclose that Callahan served as a confidential informant in Harris's case.  *See Tracy L. Cope v. State*, No. E2013-02590-CCA-R3-ECN, 2014 WL 4161480, at *3 (Tenn. Crim. App. Aug. 21, 2014), *perm. app. denied* (Tenn. Jan. 15, 2015).  Cope then filed a second petition for post-conviction relief on March 15, 2013, which the Sullivan County Criminal Court also dismissed, and the Tennessee Court of Criminal Appeals affirmed.  *See id.*

On April 15, 2013, Cope filed a petition for a writ of error coram nobis in the Sullivan County Criminal Court. [R. 9-17]  The Sullivan County Criminal Court dismissed the petition on October 1, 2013. [R. 9-18 at 153–57]  The Tennessee Court of Criminal Appeals affirmed the

dismissal on August 21, 2014, and the Tennessee Supreme Court denied Cope review. [R. 9-22]; *see Cope*, 2014 WL 4161480, at *8.

Finally, on April 17, 2015, Cope filed a petition for a writ of habeas corpus in this case in the federal district court. [R. 1] The district court dismissed Cope's petition on June 20, 2018. [R. 19] On April 3, 2019, this Court granted a Certificate of Appealability on two issues: (1) whether Cope's Due Process rights were violated under *Brady v. Maryland*, and (2) whether that claim is procedurally defaulted. [R. 14 at 8]

**II.**

"We review *de novo* a district court's decision to grant or deny habeas relief and review its factual findings for clear error." *Robinson v. Mills*, 592 F.3d 730, 734 (6th Cir. 2010) (citing *Anthony v. DeWitt*, 295 F.3d 554, 560 (6th Cir. 2002)).

The parties agree that Cope's *Brady* claim is not procedurally defaulted and that the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) apply because the Tennessee courts adjudicated Cope's *Brady* claim on the merits.[1] [State's Br. at 10]; *Cope*, 2014 WL 4161480, at *3–8. We thus assume, without deciding, that Cope's *Brady* claim is not procedurally defaulted and proceed to the merits.

We may not grant Cope habeas relief unless the State court judgment "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in

---

[1] The Tennessee Court of Criminal Appeals found that Cope untimely filed his petition for writ of error coram nobis but addressed the merits of his claim, agreeing with the Tennessee trial court that due process considerations required tolling the statute of limitations. *See Cope*, 2014 WL 4161480, at *7.

the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). A state court's finding of fact is presumed correct unless petitioner rebuts the presumption by "clear and convincing evidence." § 2254(e)(1).

"A prosecutor's suppression of evidence violates a criminal defendant's due process rights when the evidence is favorable to the accused and material either to guilt or punishment." *Thomas v. Westbrooks*, 849 F.3d 659, 663 (6th Cir. 2017) (citing *Brady*, 373 U.S. at 87)). The Supreme Court has "rejected any . . . distinction between impeachment evidence and exculpatory evidence" in assessing whether such evidence is favorable for *Brady* purposes. *United States v. Bagley*, 473 U.S. 667, 676 (1985).

Cope satisfies the first two requirements of three-part test from *Strickler*, mentioned above. The evidence would have been favorable to Cope as impeachment material concerning Callahan, and the State did not disclose that information to Cope before trial. We thus deal here with the third requirement, whether the nondisclosure of that evidence prejudiced Cope's trial. *See Strickler*, 527 U.S. at 281–82.

Prejudice occurs in the *Brady* context "where the evidence is material either to guilt or to punishment[.]" *Brady*, 373 U.S. at 87. For *Brady* purposes, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, on understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). The standard requires a showing of more than a "reasonable possibility" of a different result, *Strickler*, 527 U.S. at 291, but "does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal." *Kyles*, 514 U.S. at 434.

In dismissing Cope's *Brady* claim, the Tennessee Court of Criminal Appeals applied the coram nobis standard from *State v. Vasques*, 221 S.W.3d 514, 527 (Tenn. 2007).

*See Cope*, 2014 WL 4161480 at *8. The *Vasques* standard and the materiality standard from *Brady* and its progeny are largely the same. *Compare Youngblood v. West Virginia*, 547 U.S. 867, 870 (2006), *Stickler v. Greene*, 527 U.S. 263, 281–82 (1999), *and Brady*, 373 U.S. at 87, *with Cope*, 2014 WL 4161480 at *8. The Tennessee Court of Criminal Appeals thus did not apply law contrary to that from the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d)(1).

Nor did the Tennessee Court of Criminal Appeals unreasonably apply the *Vasques*/*Brady* standard. Although we question the state court's suggestion that evidence that Callahan served as a confidential informant before Cope's trial is not "relevant" and would be "simply cumulative" impeachment evidence, it is not so unreasonable as to violate AEDPA's "highly deferential" standard. *See Harrington v. Richter*, 562 U.S. 86, 105 (2011); *see also Robinson*, 592 F.3d at 735 (explaining that jurors "frequently disregard [a confidential informant's] testimony altogether as highly untrustworthy and unreliable"). Evidence that a victim-witness served as a confidential informant for the same law enforcement entity that investigated the present crime is certainly relevant. *See On Lee v. United States*, 343 U.S. 747, 757 (1952). Further, although Callahan may have been discredited because of her own testimony about her crack-cocaine addiction and prior arrests, evidence that Callahan served as a confidential informant would not have been simply cumulative.

But, in the end, we cannot say that the Tennessee Court of Criminal Appeals reached a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d)(2). The State had Wilson in addition to Callahan to testify about what happened inside Callahan's apartment. Cope's counsel had full opportunity to cross examine Callahan and Wilson at trial. While Callahan's and Wilson's testimony contradicted one another's in some minor respects, Cope's counsel brought this to light

on cross examination. Additionally, Cope's counsel never alleged that Callahan changed her testimony for trial. There is also no evidence that the State paid Callahan to serve as a confidential informant. We thus cannot say, based on the record before us, that the Tennessee Court of Criminal Appeals unreasonably determined that the undisclosed evidence was immaterial.

We therefore **AFFIRM** the district court's denial of the writ.